**Affirmed as Modified and Opinion Filed July 22, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-20-00109-CR**

**RAMON OSCAR ROBLEDO A/K/A
RAYMON OSCAR ROBLEDO A/K/A
RAYMOND OSCAR ROBLEDO, Appellant
V.
THE STATE OF TEXAS, Appellee**

**On Appeal from the 363rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. F-1500555-W**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Reichek
Opinion by Justice Osborne

Ramon Oscar Robledo a/k/a Raymon Oscar Robledo a/k/a Raymond Oscar

Robledo[1] appeals the trial court's final judgment convicting him of murder of a child

under ten years of age. The jury found him guilty and the trial court assessed his

punishment at life imprisonment without the possibility of parole. Robledo raises

two issues arguing: (1) the evidence is insufficient to support his conviction; and (2)

the trial court erred when it denied his request for an instruction to disregard one of

---

[1] See our discussion with respect to the correct spelling of Robledo's first name in section VI of this opinion addressing the State's cross point.

the State's questions. In a cross-point, the State requests that this Court modify the trial court's judgment to accurately spell Robledo's first name, correctly identify the State's prosecutor, and reflect that the trial judge assessed Robledo's punishment.

We conclude the evidence is sufficient. Also, we conclude the trial judge erred when she denied Robledo's request for an instruction to disregard but that error was not harmful. And the trial judge erred when she signed a judgment with mistakes in it. The trial court's final judgment is affirmed as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Robledo and Rosa Gamino had a child together, D.R. During an intervening relationship, Gamino became pregnant with her second child, G.G. While pregnant with G.G., Gamino resumed her relationship with Robledo. When G.G. was four months old, Gamino discovered she was pregnant with a third child and Robledo was the father. Around this time, Gamino and Robledo also decided to live together.

Before moving into the house where they planned to live, they stayed temporarily at a hotel. At the hotel, Gamino left G.G. with Robledo while she was at work. Around lunchtime, Robledo called Gamino and told her G.G. had fallen off the bed even though G.G. could not roll over by himself yet. At Gamino's insistence, Robledo picked her up from work. When she got into the vehicle, Gamino knew something was wrong because Robledo had covered G.G. with a blanket. When they arrived at Gamino's mother's house, Gamino removed the

blanket and saw that G.G. had "a red mark on his nose," and there were marks on his face.

On June 1, 2013, during their first weekend in the house, Gamino again left G.G. in Robledo's care while she was at work. When Gamino returned from work, she saw a bite mark that looked like a bruise on G.G.'s face. Robledo told Gamino that G.G. had hit himself with a clock. Although this story did not make sense to Gamino because G.G. could not roll over by himself, G.G. was otherwise acting normal and seemed to be ok.

Two days later, on June 3, 2013, Robledo took Gamino to work leaving D.R. and G.G. home alone. When she left, G.G. was asleep and, except for the bite mark on his face, he had no other visible injuries. About two hours later, Gamino saw that she had seven missed calls from Robledo. She texted Robledo in response and he called back to tell her that G.G. had fallen off the bed and wasn't breathing. Gamino told Robledo to call an ambulance but he refused. Instead, he drove to get her from work. When Gamino got into the car, G.G. was in his car seat in the back. G.G. was not awake, his eyes were closed, he was not making a sound, his face was purple, and there were bruises all over his face. Robledo started crying and said, "I hope he's not dead."

Robledo left Gamino and G.G. at the hospital emergency room (ER), telling Gamino he was going to work. Although G.G. was not breathing and had no pulse

when he arrived at the ER, the doctors unsuccessfully tried to resuscitate him for 15 minutes.

Based on the injuries to four-month-old G.G., the medical team suspected abuse. When Detective Angel Herring and her partner arrived at the hospital, she spoke with the medical staff, observed G.G.'s body, and spoke with Gamino. Also, Gamino called Robledo and asked him to return to the hospital, which he did. At the hospital, Robledo agreed to an interview by the detectives at the Dallas Children's Advocacy Center (DCAC).

At DCAC, Robledo told the detectives that he left G.G. on the bed and, while in another room, he heard a "boom" followed by G.G.'s crying. When he returned to the room, he found G.G. face down on the floor. He stated that he assumed G.G. had fallen off the bed again and took him into the bathroom to clean him up and calm him down because G.G.'s heart was pounding and his face was bleeding. Then, according to Robledo, G.G. closed his eyes and did not wake up. Robledo told the detectives he panicked and called Gamino. Robledo also stated that he reached into the back of the car while they were going to the hospital and G.G.'s face was cold. Robledo claimed that he left Gamino and G.G. at the hospital so he could get Gamino's purse which had her ID in it but later stated he decided to wait at a friend's house to see if she really needed it. During the interview, Robledo initially stated he hit G.G.'s bottom and feet to wake him, then he stated that he hit and shook G.G. for five to ten minutes. He stated G.G.'s facial injuries were from the previous

—4—

incident when he fell off the hotel bed, hit the car seat, and bounced up hitting the "counter" by the bed, but later demonstrated slapping and squeezing G.G.'s face. With respect to the bite mark on G.G.'s face, Robledo stated he did not know where the mark came from and blamed D.R., but he eventually admitted that he bit G.G. on the face while "playing with him." Robledo stated there was no blood in the house except for a little bit on G.G.'s shirt but later stated that the blood on the pillow was probably from his own clothes when he changed G.G.'s diaper after the fall and he wiped up the blood around the bed and in the restroom with a rag. When asked by the detective why he did it, Robledo responded that he "just lost control" because he was "frustrated."

Meanwhile, detectives went to Robledo and Gamino's house where they found Gamino's purse, which Robledo claimed he had gone to get when he left Gamino and G.G. at the hospital, a blood-stained pillow, blood stains on an article of clothing in the bathroom, and a bucket and mop. They also measured the distance from the bed to the tile floor at 22 inches.

During the autopsy of G.G.'s body, the medical examiner observed extensive external and internal injuries including: (1) scrapes to the dorsal surface and tip of the nose, the left side of the forehead, the left third finger, and the right fourth finger as well as abrasions to the posterior surface of the neck; (2) bruising around both eyes, on the left eyelid, across the forehead, on the left cheek, and scattered all over the right side of the face extending from the cheek through the temple and forehead

to the scalp; (3) a bite mark to the left cheek; (4) lacerations and bruising to the lip; (5) a torn frenulum, which connected the upper lip to the gums; (6) petechial—pinpoint—hemorrhages to the right eye and a subdural hemorrhage around the optic nerve; (7) an internal bruise to the midsection; (8) multiple rib fractures including the left and right posterior with a large hemorrhage at the left posterior fracture and lateral fractures on four right ribs and five left ribs—the presence of hemorrhaging indicated an injury from some time before CPR was administered; (9) petechia to several internal organs including the thymus, the pericardial sac, the outer surface of the heart, and both lungs; (10) a hemorrhage on the aorta and some of the connective tissue holding it in place; (11) several bruises on the internal surface of the scalp; (12) a hemorrhage in the subdural space between the brain and the tissue that connects it to the skull and subarachnoid hemorrhages on the brain; (13) the brain was edematous meaning it had an excessive amount of fluid; and (14) hypoxic encephalopathy which is a pathological condition of the brain due to lack of oxygen. The medical examiner concluded that G.G. died as a result of "blunt head trauma and possible asphyxia."

Robledo was indicted for capital murder of a child under ten years of age. *See* TEX. PENAL CODE ANN. § 19.03(a)(8). The jury found Robledo guilty and, because

the State decided not to seek the death penalty, the trial judge assessed his punishment at life imprisonment without the possibility of parole.[2]

## II. SUFFICIENCY OF THE EVIDENCE

In issue one, Robledo argues the evidence is insufficient to support his conviction because the State failed to prove he had the requisite *mens rea* to commit murder or that his actions caused G.G.'s death. He contends that his expert's testimony "credibly explained" his version of events such that no reasonable juror could have found him guilty beyond a reasonable doubt. The State responds that the jury determined the credibility of the witnesses, weighed the evidence, and found Robledo guilty.

### A. Standard of Review

Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence. *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021). When reviewing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Harrell*, 620 S.W.3d at 913–14. Further, an appellate court is required to defer to the jury's credibility and weight determinations

---

[2] On January 29, 2020, the Texas Court of Criminal Appeals granted Robledo's application for a writ of habeas corpus, which entitled him to an out-of-time appeal. *Ex parte Robledo*, No. WR-89,439-01, 2020 WL 475686, at *1 (Tex. Crim. App. Jan. 29, 2020) (orig. proceeding, not designated for publication) (per curiam).

–7–

because the jury is the sole judge of the witnesses' credibility and the weight assigned to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Harrell*, 620 S.W.3d at 914. An appellate court will consider all evidence when reviewing the sufficiency of the evidence, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or defense. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

## B. Applicable Law

A person commits the offense of capital murder if he intentionally or knowingly causes the death of a child under ten years of age. PENAL § 19.03(a)(8). A person acts intentionally, or with intent, when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). A person acts knowingly, or with knowledge, when he is aware of the nature of his conduct or that the circumstances exist, or that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Intent to kill is a question of fact determined by the jury from all the facts and circumstances in evidence. *Nunez v. State*, No. 05-07-00620-CR, 2008 WL 2377276, at *4 (Tex. App.—Dallas June 12, 2008, no pet.) (mem. op., not designated for publication).

Direct evidence of the elements of the offense, including the identity of the perpetrator and culpable mental state, is not required. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). The jury is permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as

–8–

direct evidence in establishing the guilt of the actor. *Id.* 14–15. Circumstantial evidence alone may be sufficient to establish guilt. *Id.* at 15.

Proof of a culpable mental state almost invariably depends on circumstantial evidence. *Nunez*, 2008 WL 2377276, at *4; *Martin v. State*, 246 S.W.3d 246, 263 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Intent can be inferred from the extent of the injuries to the victim, the method used to produce the injuries, and the relative size and strength of the parties. *Patrick v.* State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). In a murder case, evidence of a particularly brutal or ferocious mechanism of death, inflicted upon a helpless victim, can be controlling upon the issue of intent or knowledge. *Nunez*, 2008 WL 2377276, at *4; *Martin*, 246 S.W.3d at 263. Additionally, the culpable mental state can be inferred from the acts, words, and conduct of the accused. *Patrick*, 906 S.W.2d at 487.

Further, cases involving injury to or death of a child often depend on circumstantial evidence because there is rarely direct evidence of exactly how the injuries occurred. *Mercado v. State*, No. 05-16-00152-CR, 2016 WL 7473906, at *7 (Tex. App.—Dallas Dec. 29, 2016, no pet.) (mem. op., not designated for publication); *Bearnth v. State*, 361 S.W.3d 135, 140 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). If an adult defendant has sole access to a child when the child sustains the injuries, the evidence is sufficient to support a conviction for injury to a child or murder. *Cuadros–Fernandez v. State*, 316 S.W.3d 645, 654 (Tex. App.— Dallas 2009, no pet.).

## C. Application of the Law to the Facts

Robledo argues the evidence is insufficient because the State failed to prove his actions caused G.G.'s death. The record shows that, when G.G.'s mother left for work on the morning of his death, G.G. was asleep and, except for the bite mark on his face, he had no other visible injuries. And G.G. and D.R. were in the exclusive care of Robledo for approximately two hours before Gamino saw that she had seven missed calls from Robledo. As a result, the evidence shows that Robledo was the only adult present at the time G.G. was injured. Because Robledo was the sole adult with access to G.G. at the time G.G. sustained his injuries, the evidence is sufficient to support Robledo's identity as the offender. *See Cuadros–Fernandez*, 316 S.W.3d at 654 (concluding evidence sufficient to support conviction for injury to a child or murder if child dies where adult defendant had sole access to child when child sustained injury).

Further, Robledo argues the evidence is insufficient because the State failed to prove he had the requisite *mens rea* to commit murder and he contends that his initial statements to police were credible because his expert's testimony "credibly explained" how the evidence supported and corroborated them. However, the record shows that the pediatric emergency room physician, the medical examiner, and a pediatrician from the University of Texas Southwestern Medical School testified in detail about the extent of G.G.'s injuries. And the medical examiner concluded G.G. died as a result of "blunt head trauma and possible asphyxia." In addition, the jury

–10–

saw several photographs depicting G.G.'s injuries. Further, the jury heard testimony that, during his interview at DCAC, Robledo provided different explanations for G.G.'s injuries and his behavior. To the extent that Robledo challenges the sufficiency of the evidence on the basis of a conflict of evidence, it is actually an attack on the credibility and weight assigned to the evidence by the jury. We are required to defer to the jury's credibility and weight determinations. *See Jackson*, 443 U.S. at 319, 326; *Harrell*, 620 S.W.3d at 914.

After reviewing the evidence, we conclude that a rational jury could have found the elements of the offense beyond a reasonable doubt. Accordingly, we conclude the evidence is sufficient to support Robledo's conviction for murder of a child under ten years of age.

Issue one is decided against Robledo.

### III. INSTRUCTION TO DISREGARD

In issue two, Robledo argues the trial court erred when it denied his request for an instruction to disregard the State's question calling for the detective's opinion about the nature of the victim's injury. He maintains that error was harmful because it left the jury with an impression as to how G.G.'s injuries may or may not have occurred, influencing the verdict. The State responds that, even assuming the trial court erred, any error did not affect Robledo's substantial rights.

## A. Applicable Law

Error occurs when a trial court sustains an objection but fails to give a requested instruction to disregard. *McDaniel v. State*, No. 05-15-00638-CR, 2016 WL 4260980, at *5 (Tex. App.—Dallas Aug. 11, 2016, pet. ref'd) (mem. op., not designated for publication); *Munoz v. State*, No. 05-13-00914-CR, 2014 WL 7399331, at *5 (Tex. App.—Dallas Dec. 15, 2014, no pet.) (not designated for publication); *Irving v. State*, No. 05-12-00221-CR, 2013 WL 2297075, at *5 (Tex. App.—Dallas May 23, 2013, pet. ref'd) (mem. op, not designated for publication). However, a trial court's error in denying a request for an instruction to disregard after sustaining an objection that a proper foundation had not been laid does not rise to the level of constitutional error and, as a result, an appellate court must disregard it if it did not affect the defendant's substantial rights. TEX. R. APP. P. 44.2(b); *Munoz*, 2014 WL 7399331, at *5 (concluding error in refusing requested instruction to disregard not constitutional error); *Irving*, 2013 WL 2297075, at *5 (same); *see also Allen v. State*, No. 01-98-00229-CR, 1999 WL 548676, at *6 (Tex. App.—Houston [1st Dist.] July 29, 1999, pet. ref'd) (not designated for publication) (concluding error in admitting testimony without proper foundation not of constitutional dimension). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Scales v. State*, 380 S.W.3d 780, 786 (Tex. Crim. App. 2012). Further, it is well settled that erroneously admitted evidence will not result in reversal if other evidence that proves

the same fact was admitted without objection. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010).

## B. Application of the Law to the Facts

During the trial, the trial judge sustained Robledo's objection that the State had failed to lay a proper foundation with respect to Detective Herring's testimony about the nature of G.G.'s injuries but denied his request for an instruction to disregard as follows:

| | |
|---|---|
| State: | Just based on your experience investigating child deaths with the Dallas Police Department—I'm not asking for a medical opinion—I'm just asking on the cases that you've responded to, did those injuries appear to you to be resuscitative in nature? |
| Det. Herring: | Resuscitative— |
| Defense Counsel: | Judge, I'll object to the foundation being laid to make that kind of observation. |
| Trial Judge: | Sustained. |
| . . . . | |
| Defense Counsel: | Judge, I ask that the jury be instructed to disregard that question. |
| Trial Judge: | Denied. |

Because the trial court sustained Robledo's objection, the trial court erred when it denied his request for an instruction to disregard. *See McDaniel*, 2016 WL 4260980, at *5; *Munoz*, 2014 WL 7399331, at *5; *Irving*, 2013 WL 2297075, at *5.

Nevertheless, during the trial, the pediatric emergency room physician, the medical examiner, and a pediatrician from the University of Texas Southwestern

Medical School all testified without objection that G.G.'s injuries were not likely the result of resuscitative efforts. It is well settled that erroneously admitted evidence will not result in reversal if other evidence that proves the same fact was admitted without objection. *See Coble*, 330 S.W.3d at 282. Accordingly, we conclude that to the extent the trial court erred when it denied Robledo's request for an instruction to disregard, that error was not harmful error.

Issue two is decided against Robledo.

## VI. MODIFICATION OF THE JUDGMENT

In a cross point, the State requests that this Court modify the trial court's judgment to accurately spell Robledo's first name, correctly identify the State's prosecutor, and reflect that the trial judge assessed Robledo's punishment. The record supports the State's contentions. In addition, the judgment does not specify that the capital murder was of a child under ten years of age or the applicable subsection of the capital murder statute, and it incorrectly states that Robledo filed a written election to have the jury assess his punishment and the jury did so.

An appellate court has the authority to modify an incorrect judgment to make the record speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). We conclude the trial court's final judgment should be modified as follows:

(1) The style of the judgment which reads "The State of Texas v. Raymond Oscar Robledo" is modified to read "The State of

–14–

Texas v. Ramon Oscar Robledo a/k/a Raymon Oscar Robledo a/k/a Raymond Oscar Robledo";

(2) "Attorney for State: Shelley Fox" is be modified to read "Attorney for State: Eren Price";

(3) "Punishment Assessed by: JURY" is modified to read "Punishment Assessed by: JUDGE";

(4) "Offense for which Defendant Convicted: CAPITAL MURDER" is modified to read "Offense for which Defendant Convicted: CAPITAL MURDER OF CHILD UNDER 10";

(5) "Statute for Offense: 19.03 PENAL CODE" is modified to read "Statute for Offense: § 19.03(a)(8) PENAL CODE"; and

(6) In the section of the judgment titled "Punishment Assessed by Jury/Court/No election (select one)" the following selection:

• Jury. Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

is modified to deselect the checkbox before "Jury" and select the following checkbox:

• No Election. Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.[3]

The State's cross point is decided in its favor.

---

[3] The record shows that the jury found Robledo guilty of capital murder of a child under ten years of age and the trial judge immediately assessed his punishment at life imprisonment without the possibility of parole. *See* TEX. CODE CRIM. PROC. ANN. art. 37.071, § 1; PEN. § 12.31(b). The record on appeal does not contain a written jury request.

–15–

## VII. CONCLUSION

The evidence is sufficient to support Robledo's conviction for murder of a child under ten years of age. The trial judge erred when she denied Robledo's request for an instruction to disregard but that error was not harmful. Also, the trial judge erred when she signed a judgment with mistakes in it.

As modified, the trial court's final judgment is affirmed.

The trial court is directed to prepare a corrected judgment that reflects the modifications made in this Court's opinion and judgment in this case. *See Shumate v State*, No. 05-20-00197-CR, 2021 WL 4260768 (Tex. App.—Dallas Sept. 20, 2021, no pet.).

/Leslie Osborne//
LESLIE OSBORNE
JUSTICE

200109f.u05

Do Not Publish
TEX. R. APP. P. 47



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RAYMOND OSCAR ROBLEDO,
Appellant

No. 05-20-00109-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1500555-W.
Opinion delivered by Justice
Osborne. Justices Pedersen, III and
Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

(1)    The style of the judgment which reads "The State of Texas v. Raymond Oscar Robledo" is modified to read "The State of Texas v. Ramon Oscar Robledo a/k/a Raymon Oscar Robledo a/k/a Raymond Oscar Robledo";

(2)    "Attorney for State: Shelley Fox" is be modified to read "Attorney for State: Eren Price";

(3)    "Punishment Assessed by: JURY" is modified to read "Punishment Assessed by: JUDGE";

(4)    "Offense for which Defendant Convicted: CAPITAL MURDER" is modified to read "Offense for which Defendant Convicted: CAPITAL MURDER OF CHILD UNDER 10";

(5)    "Statute for Offense: 19.03 PENAL CODE" is modified to read "Statute for Offense: § 19.03(a)(8) PENAL CODE"; and

(6)    In the section of the judgment titled "Punishment Assessed by Jury/Court/No election (select one)" the following selection:

- Jury. Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

is modified to deselect the checkbox before "Jury" and select the following checkbox:

- No Election. Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

As **REFORMED**, the judgment is **AFFIRMED**.

We **DIRECT** the trial court to prepare a corrected judgment that reflects this modification.

Judgment entered this 22nd day of July, 2022.